*597 OPINION of the Court, by
Judge Logan.-
— This is a sun in chancery to recover a moiety ot certain lands, for locating and carrying the same into grant, at the ex-pence of the complainant, under a written contract entered into on the 17th of February 1789, between the complainant and one George Eastham, as the guardian of the defendant Wiison, lor locating and carrying into grant a military warrant, belonging to Wilson, then an infant, for 2666 and 2- 3 acres of bind, for and in consideration of one equal moiety thereof. 1 -
, . I he complainant seems to rest his emm, 1st. upon the performance of his part of the contract ; 2d, that *598 the contract was necessary to secure the warrant from loss to the infant, and therefore to his benefit ; 3d, upon the supposed custom of the country to give a part, ot the laud for locating, &c. where no special agreement had been made', taking the case out of that custom.
a ípecial a greement ro give iuch part oi the land tor loca'mg as was cudumary, would be en forced by a de - cree for a part of the land it self
But without a fpeaal agree meat, the io caior e nnot demand '-for his lervic.es a part sf the land io cared, as upon a con tact to be implied from the cuiloirary remuneration m land given by others tor Similar feivices.
Bat if he should fail m the recovery of part of the land, he prays then a decree against the guardian for the value of a moiety thereof, because oí his unauthori-sed bargain to the complainant’s injury, and prays moreover for general relief.
Wilson in his answer, relies on the want of authority in his guardian to make such a contract, and it being therefore void. On his early disapprobation of the contract, and the agreement of the complainant to n - linquish it, ami deliver up the warrant, or leave it at Janies Hickman’s for him, the defendant. On the want of such custom as in the bill is alleged, and on the appropriation of the warrant not being beneficial to him, because it has been laid on lands scarcely worth the taxes, thereon.
fhe contract and guardianship alleged are admitted. We shall proceed therefore, to consider the cause, first, with respect to the validity of the contract as originally made.
To a just decision of which these facts are proper to he noticed, that the contract was^made in the lower parts of Virginia, at a late period of locating warrants, by one the friend and guardian of an infant, where the opportunity of procuring a locator, and when the loss, of time in employing one would be most likely followed with the loss of better appropriations of land, if not in danger of a total loss of the benefit of the warrant to the proprietor. And that this contract in its origin, is free from all suspicion ol fraud or unfairness, but was made on terms not unusual or exorbitant at that day, and such as were most probable to secure the earliest and best choices of land, because the locator was made interested in such selections.
From this view ot tacts, and the best apparent means within the knowledge and power ot the guardian, we must consider how far his agreement ought to receive the Sanction of a court of equity, whatever may be his claim to excuse for a liberal adventure under a considerable penalty, to promote what to him seemed the interest of liis ward.
*599 And here the powers of a court of equity will be found acting in unison with the principles of law, in a «till further protection and furtherance of the rights of infants, by supporting and giving efficay to contracts which at law were remediless and nugatory. For whilst with the most rigid principle of law, equity will hold bargains prejudicial to infants, and not strictly warranted, void, or voidable at least ; so it will interpose its benign aid, as a protection of the rights of infants, by compelling them to regard the contracts of guardians, obviously for their benefit, and conducing to secure and save a right otherwise in danger of loss to them. And unless this power of compulsion, (but to be most cautiously applied.) is exercised by courts of equity, the fear of the possible injustice, or even the obstinacy of an infant, might prevent an undertaking essential at the time to protect and save him from a greater sacrifice.
Thus it is declared that “ a court of chancery, which in these cases acts upon principles of substantial justice and natural equity, on whom the custody of infants officially devolves, has frequently interposed, and held infants to their contracts in cases where at law they would not have been bound. The principle upon which that court proceeds, seems to be this : that as on, the one hand, if advantageous conn acts were not binding upon the persons contracting with infants, the protection which was intended as a privilege, would, in event, become a prejudice ; so, on the other band, if no agreements,would bind infants either in law or equity, that privilege, at the same time that it protected them horn prejudice, would debar them from the possibility of reaping any advantage by contracts, as none would treat with those whom they knew could rot be bound. Equity, therefore, considers the intrinsic nature of the contract, with what view it is intend into, who are the parties to it, whether the friends of the infant advise and consent to it, the extent ot its influence, and in what degree it has been executed, and directs ,he conscience of the infant according as these circumstances affect the agreement ; tberebv giv:ng to such transactions their Just efficacy.’’- — See Pow. on Contracts.
*600 It is true the doctrine cited is treating on contracts entered into by infants with the advice of friends ; but in this we can perceive no material distinction in principle, and in cases where the guardian may have made such contracts. For in equity as in law an infant is deeifred incapable of managing his estate, and therefore the power is lodged in other hands, whose acts and responsibility must depend mostly on their own correctness ; and although in some cases they should possibly derive strength from the conduct of their wards, yet in general their acts ought to be viewed as resting upon theirown conduct and responsibility.
This doctrine, applied to the case under consideration, seems most strongly indeed to justify a court of chancery, upon the contract as originally made, in compelling a specific compliance therewith. The guardian seems to have acted with good faith and from correct motives, and upon the responsibility of him, very probably, the complainant in some measure relied. But that he should be made liable out of his own estate, for a contract as guardian, made upon usual and reasonable terms, having evidently the appearance, of being beneficial to his ward, and the benefit of which his ward is enjoying, cannot, it is conceived, be consistent with the foregoing principles of equity, while the infant is held protected from all liability under the contract.
This view of the subject leads ns next to examine the effect of the promise of the complainant to deliver up the warrant, under the circumstances attending that promise.
The evidence in the cause we think supports the agreement to return the warrant, from the disapprobation evinced fay the defendant of the contract. This promise too was made before the complainant supposed the warrant had been located, or such preparations for it as seemed: to work any material injury to the complainant in renouncing the agreement. But it 'Seems moreover that after the warrant had been located, that the defendant Wilson expressed his satis!action, and stated that the complainant was to have half the land.
The effect of those facts npyn the contract, is next proper to be considered. It has bren observed that this contract could be supported only >n ac ount of its .«quitable matter in relation to tne miant. The infant- *601 having, therefore, attained the age of 21 vears before the warrant had been appropriated, and expressed his disapprobation of the contract, that equity, which the law had raised from the contract, he might certainly re» Bounce, ¾ no injury would result to the other party from a consideration paid or services performed by him. The contract in itself was not obligatory on him j but derived its obligation from the claim to which it might be entitled in good conscience and in equity^ irons die protection it furnished and rendered t<> his benefit and the preservation of his rights. But when he became master of his own will he had a right to interpose it in regard to his own rights and what was intended for his benefit, the agreement being unperformed.
The complainant, however, notwithstanding, by his agent or his frond, proceeded afterwards to carry the contract into t ff> ct. This was done deprived of the aid which equity, in protection of an infant’s right, would have afforded him under the contract of his guardian ; and therefore, must rest its claim to compensation on some other ground.
That ground the bill claims from an alleged custom of the country to a part of the land. Upon this point, the claim is totally inadmissible. An agreement that would have entitled the locator to a part of the land, which should be reasonable or customary for similar services, would present a well founded claim to a proportion of the land itself ; but the present case is not s-uch ; though the evidence shews the defendant’s ac-knowleged satisfaction of the complainant’s conduct, and his confession that the complainant was to have half the land. -
The length of time the defendant seems to have been silent on the occasion, while the complainant was carrying into grant the lands, justifies the inference, that the act of the one, was not without the permission of the other ; but still, what should be the reward of his services and expences, remains uncertain as to any special contract. The statement of the dc fendant after-wards made does not seem intended, as proven, to acknowledge that an agreement had been made by him to give one half of the land ; but taken in connection with the other evidence, relates to the original contract» *602 N^w tl.rrt contract nut h ning been valid on the ord'ina- > y .,i«- tí !nt, „t 0 the oefendant having disap-pr^'fd • >c ,r> goo l tm-, \u rannot think it ought to be applied .to the locations &c. afterwards made, unless a special agreement re-toting it teas shewn. This not having been tíone. we ate oi opinion that the complainant’s claim to a part of the land ought not to be supported; and that the court below has correctly decreed him a reasonable compensation for his services, &c, and dismissed the bill as to Easiham the guardian.